# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | SA-10-CR 183-XR |
| | § | |
| CHANAKA JAYAWARDANA | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Suppress. Defendant argues that Texas Department of Public Safety Troopers unreasonably detained and searched a vehicle he was a passenger in, violating his Fourth Amendment rights. He seeks to suppress various items (fake driver's licenses and other items that were located in the vehicle) and various statements made by him. The Motion to Suppress is DENIED.

## FINDINGS OF FACT

1.      On February 6, 2010, near Seguin, Texas, Troopers Ray and Lyde stopped a van which they believed was speeding (77 in a 70 mph zone). The car was being driven by Abdur Milon. The passenger in the car was Defendant Chanaka Jayawardana.

2.      The entire stop was visually recorded by the Troopers' camera mounted inside the marked police car. The lawful traffic stop begins at approximately 8:44:22.

3.     After the van rested onto the shoulder of the freeway, Trooper Ray exited his patrol car, noticed that the van was a rental vehicle, and walked to the front passenger side of the vehicle.

4.     Trooper Ray began questioning the passenger and driver at 8:45:06. After notifying them that they were speeding, he asks the driver to step outside of the van and they walk a few steps to the rear passenger side of the van. Trooper Ray then begins to ask where they were headed, and where they were coming from. He asks what they were going to be doing in Houston and how long the driver has known the passenger. The driver states that he is from Bangladesh, owns a grocery store in San Antonio, and that the passenger is from Sri Lanka and named "Jason."

5.     At 8:49:00, Trooper Ray begins asking the passenger questions. The Defendant states that he works for the driver's retail store on occasion, but that he lives in Georgia.

6.     At 8:50:52, Trooper Ray informs the driver that he will be issuing a warning for speeding.

7.     At 9:00:14, Trooper Ray asks the driver for his social security number and telephone numbers. He also verifies the San Antonio store address and asks further questions about the passenger. At 9:02:30 Trooper Ray asks if there is anything illegal in the van and obtains the permission of the driver to search. At 9:06:10, the driver consents to a search and the Trooper then proceeds to obtain consent from the passenger. From 9:06:50 to 9:08:56, the Trooper informs the passenger he is not under arrest but "pats down" the passenger for safety

2

concerns.

8.      The search of the van begins at 9:09:25.  At 9:11:44, the Trooper discovers an assortment of cards that makes him suspect credit card abuse of some kind. At 9:16:03, the Trooper makes a phone or radio call requesting that someone from "intel" call him about some "middle eastern guys."  The Trooper continues his search of the vehicle and at 9:18:46 he discovers brass knuckles in the area next to where the passenger was seated.  The Trooper proceeds to arrest the Defendant for possession of illegal brass knuckles, and at 9:21:26 the Defendant is given his *Miranda* warnings.  The Trooper thereafter continued his search of the van, which concluded at 9:38:58.  The driver and his two minor children were released at 9:41:47.

## CONCLUSIONS OF LAW

1.      Any finding of fact herein above which also constitutes a conclusion of law is adopted as a conclusion of law. Any conclusion of law herein made which also constitutes a finding of fact is hereby adopted as a finding of fact.

2.      Jayawardana does not challenge the validity of the initial traffic stop for speeding.

3.      The stopping of a vehicle and detention of its occupants constitutes a "seizure" under the Fourth Amendment.  The Fifth Circuit treats routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as *Terry*[1] stops.  *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)(en

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

banc).  "Pursuant to *Terry*, the legality of police investigatory stops is tested in two parts.  Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506.  The Supreme Court has stated that the "touchstone of Fourth Amendment analysis is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  The Fifth Circuit, relying upon Supreme Court cases, has stated that reasonableness "requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." *Brigham*, 382 F.3d at 507.  The Fifth Circuit has further stated that reasonableness "measured in objective terms by examining the totality of the circumstances, eschews bright-line rules, instead emphasizing the fact-specific nature of the inquiry." *Id*.

4.    Under the second prong of the *Terry* test, the question before this court is whether the Troopers'  actions after they legitimately stopped the vehicle in which Jayawardana was a passenger were reasonably related to the circumstances that justified the stop, or to dispelling the reasonable suspicion developed during the stop.  "This is because a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F. 3d at 507.

5.    The Fifth Circuit has "found no constitutional impediment to a law

4

enforcement officer's request to examine a driver's license and vehicle registration or rental papers during a traffic stop and to run a computer check on both." *Id*. at 507-508.  An officer may also ask about the purpose and itinerary of a driver's trip during the traffic stop. *Id*.; *see also U.S. v. Pack*, 612 F. 3d. 341 (5th Cir. 2010).  The Fifth Circuit has rejected "any notion that a police officer's questioning, even on a subject unrelated to the purpose of a routine traffic stop, is itself a Fourth Amendment violation." *Brigham,* 382 F.3d at 508.  The Fifth Circuit "has consistently approved a police officer's questioning a driver's travel plans where the driver was not the authorized vehicle lessee or otherwise appeared to lack driving authority." *Id*. In this case the driver was not listed as an authorized driver in the rental agreement.  See Gov't Ex. C.

6.    The Fifth Circuit has rejected any "per se rule requiring an officer immediately to obtain the driver's license and registration information and initiate the relevant background checks before asking questions." *Brigham*, 382 F. 3d at 511.  The Fifth Circuit has also rejected any "stopwatch" test to determine the legality of a stop, stating there is "no constitutional stopwatch on traffic stops.  Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Id.*  A "traffic detention may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion, supported by articulable facts within the officer's professional

judgment, that emerges during the stop." *Id.* at 512.

7.    District courts are instructed "to consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." *Id.* at 507.   Courts are also cautioned that we "must allow law enforcement 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.*

8.    Detention, however, may last no longer than required to effect the purpose of the stop.  *U.S. v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006).  "If all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop." *Id.* "A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Id.*

9.    In determining whether reasonable suspicion exists, courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.  *U.S. v. Vasquez*, 253 Fed. Appx. 365, 370 (5th Cir. 2007).  Reasonable suspicion may not be based on "inarticulate hunches of wrongdoing." *U.S. v. Thibodeaux*, 276

Fed. Appx. 372, 377 (5th Cir. 2008). The Fifth Circuit has held in a drug trafficking case that "mere uneasy feelings and inconsistent stories between a driver and a passenger do not constitute articulable facts that support a reasonable suspicion...." *U.S. v. Cavitt*, 550 F. 3d 430, 437 (5th Cir. 2008). The likelihood of criminal activity, however, "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Pack*, 612 F. 3d at 352.

10.   In this case, the government offers various reasons why there was reasonable suspicion to extend the traffic stop beyond the time the driver was informed he would be issued a warning for speeding. First, the Government argues that Abdur Milon was not an authorized driver according to the rental agreement. Secondly, the IH-10 area is a known alien and drug smuggling corridor. Thirdly, Milon and Jayawardana were unrelated men and could have been using children in their vehicle as a "cover." In addition, the driver and passenger gave conflicting answers to various questions. The driver called the passenger by a name not listed on either his driver's license or the vehicle rental agreement. The driver referred to the passenger as "just a friend." However, the passenger claimed that he worked at the driver's store. The driver stated that he was going to Houston to buy groceries for his San Antonio store, however, the passenger stated that the store was a retail store. Finally, the Trooper testified that the passenger was "defensive" and "nervous."

11.   When the Trooper returned to the occupants of the vehicle at 9:00:14, he again asked questions about their working relationship. The driver denied that

the passenger was his employee and made a reference that the passenger had family in New York.  The Government, relying upon *U.S. v. Pauyo*, 341 Fed. Appx. 955 (5th Cir. 2009), argues that the Trooper's actions were justified "as a graduated response to emerging facts."  Defendant argues that the Trooper had mere "hunches" and no particularized suspicion of a specific crime.

12.    A panel of the Fifth Circuit has conceded that it is hard to reconcile *Brigham's* en banc opinion with *U.S. v. Dortch*, 199 F. 3d 193 (5th Cir. 1999) and its progeny.  *See Pack*, 612 F. 3d at 353.  In his brief (docket no. 48), Defendant advances this argument and suggests that this Court adopt the dissent's position in *Pack*.  This Court is not authorized, however, to disregard a majority opinion rendered by a panel of the Fifth Circuit.  In *Pack*, the Fifth Circuit held that "*Brigham* should be read as having abrogated *Dortch's* requirement of particularized suspicion of a specific crime...."  *Pack*, 612 F. 3d at 355.

13.    In summarizing its opinion, the majority in *Pack* stated the following: "After *Brigham*, we do not find that a detention during a valid traffic stop violates the detainees' Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as (1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning

that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity." *Id.* at 357-358.

14.     Reviewing the direction given to this Court in *Pack*, this Court concludes: (1) facts emerged during the Trooper's investigation of the original offense that created reasonable suspicion that additional criminal activity warranting additional present investigation was afoot, (2) the length of the entire detention was reasonable in light of the suspicious facts[2], and (3) the scope of the additional investigation was reasonable in light of the suspicious facts.

15.     In his motion to suppress, the Defendant alluded that the Trooper had engaged in racial profiling.  That argument, however, was not advanced at the suppression hearing and the Trooper denied engaging in any racial profiling.

16.     The Defendant also challenges the search and argues that his consent was not voluntary and was not an independent act of free will.  It appears that the Defendant is arguing that even though he may have given consent to search the vehicle, he did not give consent to search his back pack, which was located inside the vehicle.  In evaluating the voluntariness of a consent, the Court looks to six factors:  "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's

---

[2] Consent to search was given within twenty-two minutes of stopping the vehicle. Contraband was found within twelve minutes of the search.

belief that no incriminating evidence will be found." *U.S. v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993). Although all six factors are relevant, no single factor is dispositive. *Id*. Although the Defendant was not in custody, he was not free to leave. No coercive police procedures were used. The Defendant was cooperative with the police. The Defendant was asked whether he would consent to the search, implying that he did not have to give such consent. The Defendant understood all the questions being asked of him. The Defendant believed that no incriminating evidence would be found. Defendant's consent was voluntary and was an independent act of free will.

17.    As to his argument that he did not give consent to search the back pack, Defendant gave a general consent to search the vehicle, never withdrew the consent, and accordingly closed containers in the vehicle could be searched. *See Florida v. Jimeno*, 500 U.S. 248 (1991); *U.S. v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003).

### Conclusion

Defendant's motion to suppress is DENIED.

It is so ORDERED.

SIGNED this 15th day of September, 2010.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE